JOSEPH P. RUSSONIELLO  (CSBN44332)
United States Attorney
THOMAS MOORE (ASBN 4305-O78T)
Assistant United States Attorney
Chief, Tax Division
  10th Floor Federal Building
  450 Golden Gate Avenue, Box 36055
  San Francisco, California 94102
  Telephone:  (415) 436-7017
  Fax:         (415) 436-6748

Attorneys for the United States of America

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,       ) | No.  CR-07-00554-JF |
|        **Plaintiff,**                                  ) | |
|        v.                                                 ) | **GOVERNMENT'S REPLY TO DEFENDANT'S SENTENCING MEMORANDUM** |
| DOMINIC CHANG,                              ) | |
|        **Defendant.**                              ) | DATE:     July 9, 2008<br>TIME:     9:00 a.m. |

      Plaintiff, United States of America, by its undersigned attorneys, submits this reply in response to Defendant's Sentencing Memorandum.

      <u>Defendant Should Not Be Given A Sentence Below The Guidelines Range</u>

      A.     <u>Defendant's Assertions for Below Guidelines Sentence</u>

      In seeking a sentence below the Guideline range, the defendant cites the collateral consequences of his indictment-losing face; the aberrant nature of this offense-good character, lack of criminal history and generosity to his customers, friends, and recent immigrants; and his ability to be a contributing member of society.  Defendant's Sentencing Memorandum at page 9, lines 19-23; page 10, lines 11-12, 17; page 11, lines 8-10; page 13, lines 5-14.

      B.     <u>Aberrant Behavior</u>

      The defendant cites his record as an father, friend and community member to support his argument that 6 years of lies and income tax evasion amounts to aberrant behavior.

1      The Guidelines recognize that a first offense may constitute a single act of truly aberrant behavior justifying a downward departure. *United States v. Dickey*, 924 F.2d 836, 838 (9th Cir. 1991). The absence of prior convictions, however, is not enough to show that the act in question was single and aberrant. *United States v. Takai*, 941 F.2d 738, 743 (9th Cir. 1991). In *Dickey*, the Ninth Circuit examined the factual underpinnings of what might be called the "aberrant behavior spectrum." *Dickey*, 924 F.2d at 839. In *United States v. Russell*, 870 F.2d 18, 20-21 (1st Cir. 1989), an armored truck driver who, as a result of bank error, had a bag containing $80,000 dumped in his lap and temporarily yielded to temptation. Shortly thereafter, he confessed and returned his share of the loot. The First Circuit held the facts warranted a finding of aberrant behavior. *United States v. Carey*, 895 F.2d 318, 325 (7th Cir. 1990), involved a defendant who had engaged in a check-kiting scheme over a period of fifteen months. The Seventh Circuit held that, unlike *Russell*, the defendant's actions could not be characterized as aberrant behavior because they consisted of hundreds of overt acts taking place over a prolonged period of time. Certainly, three years of income tax evasion involving the failure to report and pay $163,498 in income taxes and his numerous lies to conceal his evasion falls outside the spectrum of aberrant behavior.

      Nor has the defendant articulated a basis for a below guidelines sentence for contributions to his family, friends, and the community. "[C]ivic, charitable, or public service; employment-related contributions; and similar *prior* good works are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." [emphasis added] U.S.S.G. § 5H1.11. The question that must be asked is whether the defendant's family and civic contributions were sufficiently beyond the norm for a successful business-person. *See, e.g.*, *United States v. Morken*, 133 F.3d 628, 630 (8th Cir. 1998)(defendant's activities, which consisted of advising local business owners, hiring young people, serving on a church council, and raising money for charity, were "laudable, . . . [but] neither exceptional nor out of the ordinary for someone of his income and preeminence in a small Minnesota town. . . ."); *United States v. Haverstat*, 22 F.3d 790, 796 (8th Cir. 1994)(holding that defendant's charitable and volunteer activities did not make him an atypical defendant in antitrust price-fixing cases);

*United States v. Crouse*, 145 F.3d 786, 792 (6th Cir. 1998)(finding nine-level downward departure unsupported by defendant's civic contributions, which are not unusual for a prominent businessman).

The government does not mean to invalidate the defendant's good deeds. However, being a "good person," a quality indeed to be admired, does not qualify as extraordinary or exceptional civic or charitable conduct. *United States v. Serafini*, 233 F.3d 758, 773 (3d Cir. 2000). The question that must be asked is whether the defendant's family and civic contributions were sufficiently beyond the norm for a successful business-person, and were sufficiently exceptional so as to take him out of "a heartland of typical cases." The government submits that the defendant has failed to make such a showing.

C. <u>Collateral Consequences</u>

The defendant asserts that the public humiliation and the potential loss of livelihood also constitute a basis for a below guidelines sentence. Defendant's indictment was publicized and for that reason is widely know within his community for cheating on federal income taxes. See Defendant's Exhibit B at page 3.

In *Koon*, the district court granted a three-level departure, based upon a combination of factors, including the fact that "petitioners would face job-termination proceedings, after which they would lose their positions as police officers, be disqualified from prospective employment in the field of law enforcement, and suffer the 'anguish and disgrace these deprivations entail.'" *Koon v. United States*, 518 U.S. 81, 89 (1996). The Ninth Circuit reviewed the departure decisions and rejected them. With respect to the three-level departure for collateral consequences, the Supreme Court agreed with the Ninth Circuit concluding:

> Although cognizant of the deference owed to the District Court, we must conclude it is not unusual for a public official who is convicted of using his government authority to violate a person's rights to lose his or her job and to be barred from future government employment following conviction of a serious crime, whether or not the crime relates to their employment.

*Id*. at 110.

Similarly, it is not unusual for business persons to lose business if indicted for income tax evasion. The collateral consequences cited by the defendant simply do not take this case outside

the Guidelines' heartland. *Id*. at 96.

D. <u>Family Circumstances</u>

The defendant cites the negative effect that incarceration will have on him and his family for downward departure.

While some the sentencing courts have granted downward departures based on extraordinary family responsibilities and the impact of the sentence on innocent family members, easily as many cases stand for the opposite proposition, often in instances where the impact was more severe, than it is here. *See*, *e.g.*, *United States v. Sweeting*, 213 F.3d 95, 101-02 (3d Cir. 2000)(reversing downward departure for defendant who was the mother of five children between ages 5 and 14, and had one son who suffered from a neurological disorder); *United States v. Guy*, 174 F.3d 859, 860-61 (7th Cir. 1999)(refusing to review district court decision not to grant downward departure where defendant had 1 ½ year old child, was pregnant with another, and was the caregiver for two step-children); *United States v. Leandre*, 132 F.3d 796, 807-08 (D.C, Cir. 1998) (upholding decision not to depart for extraordinary family responsibilities where defendant was a single father and his two children might be placed in foster care); *United States v. Archuleta*, 128 F.3d 1446, 1451 (10th Cir. 1997)(reversing downward departure for family responsibilities where defendant was the sole support for two children and cared for diabetic mother, and there was no one else to care for these dependents); *United States v. Rodriguez-Velarde*, 127 F.3d 966, 968-69 (10th Cir. 1997)(reversing departure where, shortly after defendant's arrest, wife was killed in automobile accident, leaving children aged 6, 8, and 11 effectively orphaned); *United States v. Carter*, 122 F.3d 469, 474 (7th Cir. 1997)(upholding district court's refusal to grant downward departure from 168-month sentence where family life with wife and three children would suffer greatly due to the length of incarceration). *Also see United States v. Rodriguez-Velarde*,127 F.3d at 969, and *United States v. Galante*, 111 F.3d 1029, 1038-1039 (2d Cir. 1997)(dissent) both citing cases in which family circumstances did not qualify as exceptional, and therefore as grounds for downward departure.

The common thread running through all these cases was succinctly articulated by the Tenth Circuit in *Archuleta*, 128 F.3d at 1452. That is, the "Guidelines are clear that in this most

difficult and justifiably sympathy-evoking area, courts should depart downward only in rare circumstances." The courts universally recognize that the imposition of a prison sentence normally disrupts family and parental relationships, and that in many, many instances, children are the innocent victims who end up suffering the most hardship. Unfortunately, such results are not uncommon, and do not render a case outside the heartland, as described under the Guidelines and *Koon*.

While the defendant's indictment has been a strain on him, his family and friends there is nothing exceptional here to distinguish the instant case from that of all others. In fact this defendant's family will suffer less hardship than most as the defendant is divorced and his children are self reliant adults living on the east coast. Accordingly, a significant term in custody will not be a hardship to them.

E.   Conclusion

Criminal tax prosecutions play a vital role in our nation's tax system because our system of self-reported tax liability depends upon citizens' being assured that those who do not honestly report their income and pay their taxes will be appropriately punished. Because Dominic Chang is a well known tax cheat within his community, this Court should hold him accountable for his crimes so that his community will understand that compliance with tax laws must be taken seriously and that evasion of tax laws results in consequences more serious than mere loss of face.

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

/s/

THOMAS MOORE
Assistant United States Attorney
Tax Division